UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DESPINS,

          Plaintiff,                                      Hon. Richard Alan Enslen

v.                                               Case No. 4:06-CV-22

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 63 years of age at the time of the ALJ's decision. (Tr. 16). He successfully completed high school and worked previously as a truck driver and mechanic. (Tr. 16, 67-68).

Plaintiff applied for benefits on February 25, 2003, alleging that he had been disabled since July 28, 1998, due to heart problems, vision and hearing problems, and hand and body tremors. (Tr. 29, 45-47). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-53). On September 29, 2004, Plaintiff appeared before ALJ James Sparks, with testimony being offered by Plaintiff and Plaintiff's wife. (Tr. 721-40). In a written decision dated January 25, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 15-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2001. (Tr. 16, 49-53); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

On July 8, 1998, Plaintiff participated in a cardiac catheterization procedure the results of which revealed a "heavily calcified and thickened aortic valve" as well as "irregularities" in the coronary arteries. (Tr. 239). A second catheterization procedure, performed on July 16, 1998, revealed similar abnormalities. (Tr. 421). On July 28, 1998, Plaintiff underwent aortic valve replacement surgery, performed by Dr. Michael Petracek. (Tr. 102-06). The doctor also replaced Plaintiff's ascending aorta. *Id.*

On August 10, 1998, Plaintiff was examined by Dr. Thomas Johnston. (Tr. 394). The results of an examination were unremarkable and Plaintiff was instructed to increase his activity level. *Id.* When examined on August 18, 1998, Plaintiff reported that he "feels a lot better." (Tr. 365). Following a September 15, 1998 examination, Dr. Johnston reported that Plaintiff was "much improved" and was "recovering well." (Tr. 358).

On October 27, 1998, Plaintiff was examined by Dr. Johnston. (Tr. 351-52). Plaintiff reported that he was "doing much better" and could walk one mile without adverse effect. (Tr. 351). The results of a physical examination were unremarkable. *Id.*

On December 4, 1998, Plaintiff was examined by Dr. Johnston. (Tr. 347). Plaintiff reported that he was able to walk "as far as he wants to walk." The results of an examination were unremarkable and the doctor concluded that Plaintiff was "doing very well." *Id.*

On May 27, 1999, Plaintiff participated in an echocardiogram examination, the results of which revealed: (1) the prosthetic aortic valve was in proper position and functioning normally; (2) the aortic root was within normal limits; (3) normal left ventricular cavity size; (4) trivial aortic insufficiency; (5) mild left atrial enlargement; (6) right atrium and right ventricular were within

normal limits; (7) inferior vena cava and right pulmonary artery were normal size; and (8) no pericardial effusion.  (Tr. 403-04).

On January 28, 2000, Plaintiff was examined by Dr. Johnston.  (Tr. 459).  The results of a physical examination were unremarkable.  Plaintiff reported that he was "doing very well" and recently "took a cruise to the Caribbean and did very well."  *Id.*

On May 25, 2000, Plaintiff was examined by Dr. Johnston.  (Tr. 457).  Plaintiff denied experiencing shortness of breath, palpitations, syncope, or dizziness.  The results of an examination were unremarkable.  The doctor concluded that Plaintiff was "doing very well."  *Id.* An October 20, 2000 examination likewise revealed that Plaintiff was "doing very well."  (Tr. 456).

On April 27, 2001, Plaintiff was examined by Dr. Johnston. (Tr. 453-54).  The results of an examination were unremarkable.  (Tr. 453).  The doctor reported that Plaintiff "continues to improve every time I see him" and is experiencing "only. . .minimal problems."  (Tr. 453).  Plaintiff also participated in an echocardiogram examination, the results of which revealed: (1) normal left ventricular function; (2) mild concentric left ventricular hypertrophy; (3) biatrial enlargement; (4) normally functioning prosthetic aortic valve; and (5) mild tricuspid regurgitation.  (Tr. 494-95).

On November 2, 2001, Plaintiff was examined by Dr. Johnston.  (Tr. 532-33). Plaintiff reported that he was "doing very well."  (Tr. 532).  The results of an examination were unremarkable.  *Id.*  Plaintiff also participated in an EKG examination, the results of which revealed "normal sinus rhythm, borderline left atrial enlargement and left axis deviation," but was "otherwise unremarkable."  (Tr. 533).

On February 1, 2002, Plaintiff participated in an exercise stress test, the results of which revealed normal wall motion and no evidence of myocardial ischemia.  (Tr. 481).

On May 16, 2002, Plaintiff was examined by Dr. Johnston.  (Tr. 446).  The results of an examination were unremarkable and the doctor concluded that Plaintiff was "doing very well." *Id.*  Plaintiff also participated in an echocardiogram examination, the results of which revealed: (1) normal left ventricular size and function; (2) normal wall thickness; (3) mildly enlarged left atrium; (4) normal right atrium; (5) normal size and function of the right ventricle; (6) structurally normal heart valves; (7) trace aortic insufficiency; (8) mild tricuspid regurgitation; (9) no pericardial effusion; (10) no cardiac mass; and (11) normal aortic root.  (Tr. 476).

On May 22, 2002, Plaintiff participated in an MRI examination of his brain, the results of which revealed "no significant intracranial vascular stenosis or other abnormality."  (Tr. 156-57).

On May 30, 2002, Plaintiff was examined by Dr. Wayne Cornblath.  (Tr. 167-68).  Plaintiff reported that he began experiencing vision loss approximately two weeks previously which progressed to the point that he "could only make out large shapes or shadows."  (Tr. 167).  Plaintiff reported that his vision had "improved" over the previous 4-5 days.  Plaintiff exhibited 20/20 visual acuity in his right eye and 20/200 in his left eye.  *Id.*  Dr. Cornblath concluded that Plaintiff's symptoms were "most consistent with a bilateral post-viral retrobulbar optic neuritis."  (Tr. 168).  The doctor noted that "most patients have a good recovery without recurrence."  *Id.*

On July 16, 2002, Plaintiff reported that his vision had improved and that he was able to drive and watch television.  (Tr. 145).

On August 8, 2002, Plaintiff was examined by Dr. Cornblath.  (Tr. 165-66). Plaintiff reported that he has experienced "marked improvement" in his vision and that he was "back to eighty

6

percent of normal." (Tr. 165). The results of an examination were unremarkable and the doctor concluded that Plaintiff had experienced "excellent recovery." *Id.*

On November 1, 2002, Plaintiff participated in CT scan of his head, the results of which revealed "mild" pariventricular small vessel ischemic changes, but "no evidence for acute intracerebral hemorrhage, mass effect, or midline shift." (Tr. 177). X-rays of Plaintiff's lumbar spine, taken the same day, revealed degenerative changes. (Tr. 260).

On November 25, 2002, Plaintiff was examined by Dr. Cornblath. (Tr. 162-63). Plaintiff reported that his vision was "stable" without "much change." (Tr. 162). Plaintiff reported that he continued to experience difficulty in fluorescent lighting environments, but that sunglasses "help." Plaintiff exhibited 20/20 visual acuity in his right eye and 20/30 +2 acuity in his left eye. The doctor concluded that Plaintiff was "slightly better with an improvement in his contrast sensitivity and color vision compared to his last visit." *Id.*

On May 14, 2003, Plaintiff was examined by Dr. Michael Kaminski. (Tr. 624). Plaintiff denied any worsening of his visual function. Plaintiff's speech was clear and cranial nerve testing revealed no evidence of afferent pupil defect. Plaintiff exhibited full ocular motility and his color vision was symmetrical. His smile was normal and his motor power was good. Plaintiff did, however, exhibit a "head nodding tremor" as well as a "moderate kinetic and action tremor." The doctor diagnosed Plaintiff with a "benign essential tremor with acral and cephalic component." *Id.*

On May 22, 2003, Plaintiff was examined by Dr. Johnston. (Tr. 663). The results of an examination were unremarkable and the doctor reported that Plaintiff was "doing very well." *Id.* Plaintiff also participated in an echocardiogram examination, the results of which revealed: (1) normal size and function of the left ventricle; (2) normal left ventricular ejection fraction; (3) normal

left ventricular wall thickness; (4) the left atrium was borderline enlarged; (5) normal right atrium; (6) normal size and function of the right ventricle; (7) properly functioning heart valves; (8) trace aortic insufficiency; (9) trace mitral and tricuspid regurgitation; (10) no pericardial effusion; (11) no intracardiac mass; and (12) normal aortic root.  (Tr. 688).

On August 22, 2003, Plaintiff was examined by Dr. Kaminski.  (Tr. 623).  Plaintiff reported that his vision was "stable," but that he "does remain somewhat light sensitive."  The doctor observed that Plaintiff's "essential tremor is persistent despite [medication]" and he "still remains somewhat steady afoot."  Plaintiff exhibited a "head nodding tremor" and a "moderate kinetic and action tremor."  Dr. Kaminski also observed that Plaintiff's "gait was cautious, short stepped, and mildly unsteady."  *Id.*

On February 24, 2004, Plaintiff was examined by Dr. Johnston.  (Tr. 655-56).  Plaintiff reported that he was "doing well" without orthopnea, pedal edema, palpitations, syncope, chest pain, or shortness of breath.  (Tr. 655).  The results of an examination were unremarkable and the doctor concluded that Plaintiff was "doing well from a cardiac standpoint."  (Tr. 656).

On August 20, 2004, Plaintiff was examined by Dr. Kaminski.  (Tr. 622).  Plaintiff reported that he was "feeling somewhat more unsteady afoot."  Plaintiff exhibited a "head nodding tremor" and a "moderate kinetic action tremor."  His gait was "cautious and mildly unsteady."  Dr. Kaminski reiterated that Plaintiff was suffering from a "benign essential tremor with acral and cephalic component."  *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1420(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

### B.  The ALJ's Decision

The ALJ determined that prior to the expiration of his insured status Plaintiff did not suffer from a severe impairment.  (Tr. 19).  As noted immediately above, a claimant who does not have a "severe impairment" will not be found "disabled."  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof). As previously noted, the ALJ denied Plaintiff's request for benefits at step two of the sequential process, having determined that Plaintiff did not suffer from a severe impairment prior to the expiration of his insured status.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work

situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Shafer v. Apfel*, 2000 WL 33146935 at *10 (D. Kan., Dec. 22, 2000).

An impairment is less than severe if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (citations omitted).

As the medical evidence detailed above reveals, Plaintiff's 1998 heart surgery was successful and Plaintiff recovered quickly without complication. Follow-up examinations consistently revealed that Plaintiff was "doing very well" and was able to perform a variety of activities including walking "as far as he wants to" and vacationing in the Caribbean. Moreover, none of Plaintiff's care providers ever imposed any limitations on Plaintiff's ability to perform work activities.

With respect to Plaintiff's claim that he suffered from a severe tremor disorder, the ALJ correctly concluded that there exists no medical evidence that Plaintiff was significantly limited by such prior to December 31, 2001, the date he was last insured for Title II benefits. During an August 3, 1998 examination Plaintiff reported experiencing a tremor. (Tr. 213-14). However, Plaintiff reported that he was not taking any medication to treat this condition and the results of an examination were unremarkable. *Id.* Plaintiff's care providers did not impose any limitations on Plaintiff's ability to function as a result of this condition and prior to the expiration of his insured status Plaintiff did not again report experiencing such tremors. While Plaintiff asserts that he experienced tremors so severe that he was unable to sign his name, hold a fork, or use a toothbrush the medical record contains no evidence to support such assertions, let alone that such occurred prior

to the expiration of Plaintiff's insured status.  As the ALJ correctly observed, the nature and extent of treatment which Plaintiff received for this condition prior to the expiration of his insured status is inconsistent with his allegations or the assertion that such constituted a severe impairment.

In sum, as noted previously, at step two of the sequential process Plaintiff bears the burden of demonstrating that he suffered from a severe impairment prior to the expiration of his insured status.  While Plaintiff's health appears to have eventually deteriorated, such was subsequent to the expiration of his insured status and, therefore, does not support Plaintiff's claim for benefits.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 25, 2007                              /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge